UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| RAFAEL SERRANO, | Case No. 2:13-cv-01214-JAD-PAL |
| Plaintiff, | **REPORT OF FINDINGS AND RECOMMENDATION** |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | (Mtn to Remand – Dkt. #12) (Cross Mtn Affirm – Dkt. #15) |
| Defendant. | |

This case involves judicial review of administrative action by the Commissioner of Social Security denying Plaintiff Rafael Serrano's claim for disability benefits under Title II of the Social Security Act (the "Act").

## BACKGROUND

On October 29, 2008, Plaintiff filed an application for disability insurance benefits, alleging he became disabled on September 4, 2008.  AR[1] 190-203.  The Social Security Administration ("SSA") denied Plaintiff's application initially and on reconsideration.  AR 82-83, 84-85.  Administrative law judge ("ALJ") Michael B. Kennett held a hearing on September 23, 2011.  Plaintiff appeared with counsel.  AR 52-81.  In a decision dated October 14, 2011, the ALJ found Plaintiff was not disabled.  AR 26-39.  Plaintiff requested review of the ALJ's decision by the Appeals Council, and the ALJ's decision became the Commissioner's final decision when the Appeals Council denied review on May 11, 2013.  AR 1-8.

On July 10, 2013, Plaintiff filed an Application to Proceed in Forma Pauperis (Dkt. #1) and submitted a Complaint (Dkt. #4) in federal court, seeking judicial review of the

---

[1] AR refers to the Administrative Record, which was delivered to the undersigned upon the Commissioner's filing of her Answer (Dkt. #9) on October 21, 2013.

1

Commissioner's decision pursuant to 42 U.S.C. § 405(g).  The Commissioner filed her Answer (Dkt. #9) on October 21, 2013.  Plaintiff filed a Motion for Remand (Dkt. #12), and the Commissioner filed a Response and Cross-Motion to Affirm (Dkt. ##15, 16) on February 6, 2014.  The court has considered the Motion, the Response and Cross-Motion, and Plaintiff's Reply (Dkt. #18) filed March 3, 2014.

**DISCUSSION**

**I.      Judicial Review of Disability Determination.**

District courts review administrative decisions in social security benefits cases under 42 U.S.C. § 405(g).  *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).  The statute provides that after the Commissioner of Social Security has held a hearing and rendered a final decision, a disability claimant may seek review of the Commissioner's decision by filing a civil lawsuit in federal district court in the judicial district where the disability claimant lives.  *See* 42 U.S.C. § 405(g).  That statute also provides that the district court may enter, "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  The Ninth Circuit reviews a decision of a District Court affirming, modifying, or reversing a decision of the Commissioner de novo.  *See Batson v. Commissioner*, 359 F.3d, 1190, 1193 (9th Cir. 2003).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g); *see also Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005).  However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence.  *See Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1052 (9th Cir. 2006); *see also Thomas v. Barnhart,* 278 F.3d 947, 954 (9th Cir. 2002).  The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart,* 427 F.3d 1211, 1214 n. 1 (9th Cir. 2005).  In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole,

weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see* also *Smolen v. Chater,* 80 F.3d 1273, 1279 (9th Cir. 1996).

Under the substantial evidence test, the Commissioner's findings must be upheld if supported by inferences reasonably drawn from the record. *Batson*, 359 F.3d at 1193. When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see also Flaten v. Sec'y of Health and Human Serv.,* 44 F.3d 1453, 1457 (9th Cir. 1995). Consequently, the issue before the court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence.

It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. Mere cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are not sufficient. *See Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). The ALJ's findings "should be as comprehensive and analytical as feasible, and where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Id.*

## II. Disability Evaluation Process

The claimant has the initial burden of proving disability. *See Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122 (1996). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant must provide "specific medical evidence" to support his or her claim of disability. If a claimant establishes an inability to perform his or her prior work, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful work that exists in the national economy. *Batson*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled.  *See* 20 C.F.R. § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  If at any step the ALJ makes a finding of disability or non-disability, no further evaluation is required.  *See* 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *see also Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).  The first step requires the ALJ to determine whether the individual is currently engaging in substantial gainful activity ("SGA").  *See* 20 C.F.R. §§ 404.1520(b) and 416.920(b).  SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities, usually for pay or profit.  *See* 20 C.F.R. §§ 404.1572(a)-(b) and 416.972(a)-(b). If the individual is currently engaging in SGA, then a finding of not disabled is made.  If the individual is not engaging in SGA, then the analysis proceeds to the second step.

The second step addresses whether the individual has a medically-determinable impairment that is severe or a combination of impairments that significantly limits him or her from performing basic work activities.  *See* C.F.R. §§ 404.1520(c) and 416.920(c).  An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work.  *See* C.F.R. §§ 404.1521 and 416.921; Social Security Rulings ("SSRs") 85-28, 96-3p, and 96-4p.[2]  If the individual does not have a severe medically-determinable impairment or combination of impairments, then a finding of not disabled is made.  If the individual has a severe medically-determinable impairment or combination of impairments, then the analysis proceeds to the third step.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.826.  If the individual's impairment or combination of

---

[2] SSRs are the SSA's official interpretations of the Act and its regulations.  *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see* also 20 C.F.R. § 402.35(b)(1). They are entitled to some deference as long as they are consistent with the Act and regulations. *See Bray*, 554 F. 3d at 1223 (finding ALJ erred in disregarding SSR 85-41).

impairments meet or equal the criteria of a listing and meet the duration requirement (20 C.F.R. §§ 404.1509 and 416.909), then a finding of disabled is made. *See* 20 C.F.R. §§ 404.1520(h) and 416.920(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the ALJ must first determine the individual's residual functional capacity ("RFC"). *See* 20 C.F.R. §§ 404.1520(e) and 416.920(e). RFC is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* SSR 96-8p. In making this finding, the ALJ must consider all the relevant evidence such as symptoms and the extent to which they can be reasonably be accepted as consistent with the objective medical evidence and other evidence. *See* 20 C.F.R. §§ 404.1529 and 416.929; SSRs 96-4p and 96-7p. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, and 06-3p.

The fourth step requires the ALJ to determine whether the individual has the RFC to perform his past relevant work ("PRW"). *See* 20 C.F.R. §§ 404.1520(f) and 416.920(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last fifteen years or fifteen years prior to the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and to perform it as SGA. *See* 20 C.F.R. §§ 404.1560(b), 404.1565, 419.960(b), and 416.965. If the individual has the RFC to perform his past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to the fifth and final step.

Step five requires the ALJ to determine whether the individual is able to do any other work considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g) and 416.920(g). If he or she can do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Yuckert*, 482 U.S. at 141-42.

### III.  Factual Background.

#### A. Testimony at Administrative Hearing.

Serrano appeared at the administrative hearing with the assistance of a Spanish interpreter and was represented by counsel, Brandon Wright. Serrano testified he was born in El Salvador January 15, 1964. AR 56. He has been in the United States for twenty-three years and is married, living with his wife and two children. *Id.* Serrano testified he had an eighth grade education in El Salvador, and no formal education in the United States. AR 57. He speaks and can read and write a little bit of English. *Id.* At the time of the hearing he was not currently working and had last worked in September 2008. *Id.* He stopped working because he was blind in his left eye, had diabetes and high blood pressure. AR 58. He developed his eye problem in 2005 when he was forty-one. *Id.* The ALJ noted that this testimony was inconsistent with Exhibit 3F that was marked and admitted in the record which indicated he told Dr. Pazekas (phonetic) that the left eye was removed as a child. *Id.* Serrano testified he was 5'2", weighed 200 lbs., and was right-handed. AR 59.

The ALJ inquired of counsel regarding his theory of disability for Mr. Serrano. Counsel indicated he believed Serrano qualified under listings 2.02-2.04 for his impaired vision, and 12.04 for depression. *Id.* Counsel also indicated that, although the diabetes listing had been removed, he believed Serrano's significant challenges taken together would make it challenging to maintain employment in the national economy. *Id.*

Serrano testified that he was currently seeing Dr. Alvarado at the Guadalupe Medical Center for medical care. *Id.* Serrano believed the loss of his eye interfered with his ability to

1    work as well as his diabetes and high blood pressure because his sugar level was constantly

2    increasing.  AR 60.  At the time of the administrative hearing he did not use anything to walk or

3    keep his balance such as a cane, crutch or walker and did not wear any braces or supports.  *Id.*

4    He smoked approximately 10-15 cigarettes a day.  *Id.*  He occasionally drank alcohol every six

5    or seven months.  AR 61.  The ALJ pointed out that counsel let him know that Exhibit 18F

6    reflects a history of alcoholism, and that Exhibit 17F, records from Valley Hospital, indicate a

7    Valley Hospital admission for diabetic ketoacidosis reflected Serrano was counseled about

8    alcohol's effect on diabetes.  *Id.*

9    Serrano denied he had ever used illegal drugs.  *Id.*  He had a driver's license and

10   occasionally drove  an automatic transmission.  *Id.*  His wife did most of the cooking.  Serrano

11   helped his wife sweep sometimes, but did not do any other chores such as pet care or yard work.

12   AR 62.  Serrano testified he watched television and sometimes used a computer to watch news

13   from his native country.  *Id.*  He did not go to church, but liked to go fishing.  *Id.*  He last went

14   fishing at Lake Mead about two months prior to the hearing.  AR 63.  He estimated he could stay

15   on his feet about ten minutes standing or walking.  *Id.*  After that he had problems with his lower

16   back.  *Id.*  The pain sometimes spread into his legs or hip halfway down through the thigh.  *Id.*

17   Serrano testified that on an average day, he was able to sit for about a half hour before

18   shifting positions.  AR 64.  He has back pain when he sits.  *Id.*  He could lift twenty pounds

19   before experiencing back pain.  *Id.*

20   In response to questions posed by his own attorney, Serrano testified that he last drank

21   two months prior to the hearing.  AR 64.  He drank a lot before that and specifically before he

22   had the accident involving his eye.  *Id.*  His eye problem and blood pressure and sugar level

23   caused him to cut down on his drinking.  AR 65.  Serrano had never lost a job because of his eye.

24   AR 66.  His normal blood sugar in the morning is 180, "and then I start implementing my diet."

25   *Id.*

26   The ALJ asked Serrano if he tried to eat something in the evening before bed.  *Id.*

27   Serrano said that he did not and had supper at 6:00 p.m.  The ALJ advised Serrano that he also

28

7

was diabetic, had high blood pressure and heart disease, and that Serrano should try eating something before bed so that his blood sugar was not so high in the morning.  *Id.*

Serrano testified that he ran into and bumped into walls often.  His wife helped him shave his left side.  *Id.*  He had been diagnosed with depression and was on medication every day for it.  *Id.*  He once tried suicide approximately six years prior by slashing a vein on his arm.  AR 69.  When asked whether he had problems concentrating he responded "a little bit."  AR 70.  His memory was "fairly good."  *Id.*

Vocational Expert ("VE") Bernard Preston testified he was familiar with the Commissioner's definitions concerning skill and exertional levels.  AR 71.  Serrano's past relevant work as a kitchen worker is a medium level SVP skill level two, which is unskilled.  *Id.*  His porter position was a medium level unskilled work.  *Id.*  The ALJ posed the following hypothetical: assuming a claimant of Serrano's age, education and past relevant work, blind in left eye, with depth perception problems, problems reaching overhead with the right upper extremity, limited to unskilled work with a medium residual functional capacity, able to lift twenty-five pounds frequently, fifty pounds occasionally, the ability to be on time and on his feet 6 out of 8 hours per day.  The ALJ asked whether this hypothetical claimant could do Serrano's past relevant work.  AR 71-72.  The VE responded that the eyes were not a requirement under the DOT[3] for his past relevant work.  AR 72.  However, a limitation in reaching would eliminate the kitchen worker position which requires constant reaching.  *Id.*  Serrano could do the porter job with the limitations the ALJ described according to the DOT.  AR 73.  The VE clarified that DOT assumes a person has two eyes "but again, the hypothetical indicated, and the DOT requires not present which is kind of a grey area in DOT."  *Id.*

The ALJ posed an additional hypothetical: assuming a hypothetical claimant was limited to light residual functional capacity, that is, lifting ten pounds frequently, twenty pounds occasionally on his feet 6 out of 8 hours a day with all of the earlier described descriptions, and asked whether this hypothetical claimant could do Serrano's past relevant work.  AR 73.  The

---

[3] DOT refers to the *Dictionary of Occupational Titles.*

VE testified that there were jobs such a hypothetical claimant could perform that exist in the national economy such as cafeteria attendant which is a light, unskilled job.  AR 74.  In Nevada, there were 2,336 such positions, and 114,633 positions nationally.  Such a claimant could also work as a carwash attendant which is an unskilled position.  *Id.*  The ALJ rejected this testimony suggesting that someone with depth perception and peripheral vision problems should not be around moving vehicles because of the hazard of being run over.  AR 74-75.  The VE testified Serrano could also work as an usher which is an unskilled, light job with 1,460 jobs in Nevada, and 84,238 jobs nationwide.  AR 75.

On cross-examination, the VE testified that a limitation of occasional visual acuities would eliminate the usher position, but not the cafeteria position.  AR 76.

The ALJ clarified the hypothetical.  He asked whether a hypothetical claimant of Serrano's age, education, past relevant work limited to a light RFC on everything except the eyes and limited to unskilled work with no depth perception because he only had one eye and no peripheral vision to the left eye, could still do the cafeteria attendant job.  AR 77-78.  The VE testified such a claimant could not, but would be able to do the usher job.  AR 78.  DOT has different categories "non-present, occasional, frequent, and constant" and "it's tricky because they're assuming two eyes."  *Id.*  However, the visual problems would not impact Serrano's ability to be an usher or a porter because under the DOT regulations, depth perception and near acuity are "non-present" which means they are not a requirement for the jobs.  AR 79.

Before the hearing adjourned, counsel for Serrano directed the ALJ's attention to a note in the record at 13F that reflected when Serrano went in to have an eye prosthetic inserted.  AR 80.

### B.  Plaintiff's Medical Records.

Plaintiff stipulated that the ALJ fairly and accurately summarized the evidence and testimony of record except as argued to the contrary in his brief.  The Commissioner's brief called the court's attention to an August 27, 2009 comprehensive internal medical evaluation performed by Dr. Karl Fazekas, the January 28, 2010 orthopedic evaluation conducted by Conrad O. Yu, and the mental status consultative evaluation performed by Dr. Maria Doncaster,

1   PhD, on March 3, 2010.  The Commissioner's brief also cited treatment records for Serrano's

2   diabetes and miscellaneous ailments.

3   **IV.    The ALJ's Decision.**

4          The ALJ concluded that Serrano had not been under a disability within the meaning of

5   the Social Security Act from September 4, 2008, through the date of his October 14, 2011

6   decision.  AR 33-42.  He found that Serrano met the insured status requirements through

7   December 31, 2013, and had not engaged in substantial gainful activities since September 4,

8   2008, the alleged onset date.  AR 35.  He found Serrano had severe impairments consisting of:

9   left eye blindness, diabetes mellitus (insulin dependent), hypertension, degenerative joint disease

10   of the upper right extremity, and depression.  *Id.*  Serrano did not have an impairment or

11   combination of impairments that met or medically equaled the severity of one of the listed

12   impairments.  *Id.*

13          In making this determination, he considered Listings 2.02 regarding loss of visual acuity,

14   2.03 regarding contraction of the visual field in the better eye, 2.04 regarding loss of visual

15   efficiency, and 9.08 regarding diabetes mellitus.  Serrano did not meet or medically equal listing

16   2.02 because his best corrected vision in the right eye was 20/30 and the Listing requires best eye

17   correction of 20/200 or less to qualify.  AR 36.  Serrano did not meet or medically equal Listing

18   2.03 because he had full visual acuity in the right eye.  *Id.*  He did not meet or medically equal

19   Listing 2.04 because there was no evidence that he had a visual efficient of the right eye of

20   twenty percent or less after best correction.  *Id.*  He did not meet listing 9.08 because there was

21   no evidence of neuropathy demonstrated by significant and persistent disorganization of motor

22   function in two extremities resulting in sustained disturbance of gross and dexterous movements,

23   or gait and station; acidosis occurring at least on average of once every two months documented

24   by appropriate blood chemical test; or retinitis proliferans.

25          The ALJ also found that the severity of Serrano's mental impairment did not meet or

26   medically equal the criteria of Listing 12.04 considering the "Paragraph B" criteria.  *Id.*  The

27   ALJ found Serrano had no restriction in activities of daily living and social functioning.  *Id.*  He

28   found Serrano had moderate difficulties for detailed and complex tasks with regard to

concentration, persistence or pace, but no limitations for tasks involving simple one-or-two step instructions.  AR 36.  The ALJ's opinion acknowledged that the psychological examiner found that Serrano's ability to handle and understand detailed and complex tasks and instructions was poor.  However, she found that Serrano should have no difficulty with simple one-or-two step instructions.  Based on these findings, the ALJ found the claimant had moderate limitation regarding detailed and complex tasks and no limitations for simple tasks.  *Id.*  There were no episodes of decompensation of extended duration.  *Id.*  As a result, the ALJ found that Serrano's mental impairment did not cause at least two "marked" and repeated episodes of decompensation of extended duration, and therefore, did not meet the "Paragraph B" criteria.  AR 37.

The ALJ also considered the "Paragraph C" criteria of Listing 12.04.  There was no medically documented history of chronic affective disorder of at least two years' duration causing more than minimal limitation of the ability to do basic work activities, with symptoms or signs currently attenuated by medical or psychological support and repeated episodes of decompensation of extended duration, or a residual disease process resulting in such marginal adjustment that even a minimal increase in mental demand or change in environment would be predicted to cause the claimant to decompensate.  *Id.*  There was also no current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

After considering the record as a whole, the ALJ found that Serrano had the residual functional capacity to perform unskilled medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c), except that he had no peripheral vision in the left eye, no depth perception, and was limited to unskilled work.  *Id.*  The ALJ also found that overhead reaching with the right upper extremity was limited to frequent, rather than constant.  *Id.,* citing Exhibit 8F-4.  The ALJ found that Serrano's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent they were inconsistent with his RFC assessment, because they were not supported by objective medical signs and findings of the record as a whole under SSR 96-7p.  AR 38.  The opinion summarized the portions of the medical record on which the ALJ relied in reaching his findings at AR 38-41.

1       The ALJ gave great weight to the internal medicine evaluation performed by Dr. Karl

2   Fazekas, the consultative examiner who performed his evaluation August 27, 2009.  AR 38.  Dr.

3   Fazekas found that Serrano could occasionally lift and/or carry fifty pounds, frequently lift

4   and/or carry twenty-five pounds, and sit, stand or walk eight hours in an eight-hour workday.

5   AR 39.  Dr. Fazekas also found Serrano was limited in his ability to see secondary to the loss of

6   the left eye.  AR 39.  The ALJ gave his opinion great weight because it was based on a thorough

7   examination of the claimant and consistent with the medical evidence.  *Id.*

8       The ALJ gave some weight to the February 9, 2010, state agency medical consultant

9   opinion that Serrano could occasionally lift and/or carry twenty pounds, frequently lift and/or

10   carry twenty-five pounds, and sit, stand or walk about six hours in each eight-hour workday.  AR

11   39.  The ALJ pointed out that in filling out the form, it was clear a mistake had been made in

12   finding Serrano could only occasionally lift twenty pounds, while having the physical capacity to

13   frequently lift twenty-five pounds.  *Id.*  The same examiner concluded Serrano had a light RFC,

14   meaning he could occasionally lift twenty pounds, and frequently lift ten pounds.  AR 40.  The

15   state agency consultant determined that Serrano was somewhat limited in his ability to reach

16   overhead, which the ALJ found was supported by the medical evidence that indicated he had

17   mild arthritis of the upper right extremity.  *Id.*  However, the ALJ found the record did not

18   completely support state agency medical consultant's opinion concerning depth perception

19   limitations or Serrano's ability to lift and/or carry.  *Id.*  The ALJ relied on Dr. Fazekas' report

20   that Serrano had no physical limitations that would prevent him from engaging in past relevant

21   work at the medium exertional level.  *Id.*

22       The ALJ gave great weight to the psychological examination conducted by Dr. Maria

23   Doncaster, PhD, on March 3, 2010.  *Id.*  Serrano reported to Dr. Doncaster that he felt old and

24   depressed.  AR 40.  The ALJ's opinion recited specific portions of her report containing

25   Serrano's reports to her, and the results of her testing.  *Id.*  He gave Dr. Doncaster's opinion great

26   weight because it was based on a thorough examination of Serrano and the opinions were within

27   the area of her expertise.  AR 41.

28

The ALJ gave some weight to the state agency psychologist who opined that Serrano had mild limitation in activities of daily living, no difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence and pace, and no episodes of decompensation of extended duration.  *Id.*  The ALJ found that Serrano reported no real difficulties in activities of daily living because he was able to feed and bathe himself, help care for his children, prepare meals, and help with light housework such as sweeping.  *Id.*  Serrano also reported no difficulties in social functioning indicating he regularly visited with friends and family and was capable of engaging in conversation with Dr. Doncaster.  *Id.*  Concerning concentration, persistence and pace, Dr. Doncaster found that Serrano's ability to handle and understand detailed and complex tasks and instructions was poor.  However, Dr. Doncaster also found that Serrano should have no difficulties with simple one-or-two step instructions.  For these reasons, the ALJ found that Serrano had moderate limitation regarding detailed and complex tasks, and no limitations for simple tasks.  *Id.*

The ALJ concluded that Serrano was capable of performing his past relevant as a hotel porter which is rated as SVP 2, medium, and that this work did not require work-related activities precluded by Serrano's RFC.  *Id.*  This finding was based on the vocational expert's testimony. *Id.*  Alternatively, the ALJ found that assuming Serrano could not perform medium work, but could perform light work with the same limitations, the vocational expert testified that Serrano could still perform work as an usher, classified as SVP 2 (unskilled), light, with 1,460 jobs in the State of Nevada, and 84,238 jobs in the national economy.  *Id.*

## V.   **The Parties' Positions.**

### A.  **Plaintiff's Motion to Remand (Dkt. #12).**

Serrano argues that the ALJ's residual functional capacity is not supported by substantial evidence because the ALJ failed to properly evaluate the medical evidence and that the ALJ's mental RFC assessment is inconsistent with the medical evidence of record.  Serrano claims that his severe mental impairment prevents him from performing his past relevant work or the alternative work identified by the vocational expert.  The ALJ gave great weight to the opinion of Maria Doncaster, Ph.D, the consultative examiner who opined that Serrano was limited to

simple one-or-two-step instructions.  Serrano argues that the ALJ's finding of a limitation to unskilled work does not adequately take into account this limitation.  Because the ALJ gave great weight to the opinions of Dr. Doncaster, the court should credit that limitation as true.

Serrano argues that the alternative occupations identified by the vocational expert are unskilled, but require more than carrying out one-or-two-step tasks.  Hotel porter and usher requires a reasoning level two, which requires the ability to apply common sense understanding to carry out detailed, but uninvolved written or oral instructions, and deal with problems involving a few concrete variables in or from standardized situations.  Serrano contends that a limitation to one to two-step jobs "relegates him to reasoning level one jobs only."

Serrano concedes that the ALJ properly used the services of a vocational expert, but argues the ALJ failed to pose a hypothetical that adequately took into account all of his limitations, specifically, inclusion of a limitation of simple one-or-two-step instructions.  Thus, the vocational expert's testimony lacks support in the record or is incomplete and has absolutely no evidentiary value.  The Commissioner has the burden to demonstrate the existence of any element of the disability equation at step five of the sequential evaluation process, and the ALJ's failure to sustain his burden at step five mandates that the court set aside his decision.  The court should therefore reverse and award benefits, or alternatively, remand for taking additional vocational testimony.

Serrano also argues that the ALJ committed legal error by impermissibly rejecting Serrano's subjective symptom testimony.  The medical evidence in this case demonstrates the presence of left-eye blindness, diabetes mellitus (insulin dependent), hypertension, degenerative joint disease of the right upper extremity, and depression.  In evaluating Serrano's complaints of limitation, the ALJ and the court are obliged to consider the testimony in light of the record as a whole.  In this case, there is no evidence of malingering and the ALJ found none.  The ALJ failed to articulate clear and convincing reasons supported by substantial evidence for finding Serrano not fully credible in his complaints.  Because the ALJ did not articulate sufficient reasons for rejecting Serrano's truthful and medically-supported testimony that he lacked the ability to engage in full-time, competitive employment on a consistent basis, the court must

apply the "Smolen" test and remand for an immediate award of benefits.  Alternatively, the court should remand for proper evaluation of Serrano's complaints including the taking of vocational expert testimony.

**B.  The Commissioner's Response & Cross-Motion to Affirm (Dkt. ##15, 16).**

The Commissioner argues that substantial evidence supports the ALJ's residual functional capacity determination that Plaintiff was capable of unskilled work.  At the hearing, the vocational expert testified that a hypothetical person with Plaintiff's limitations could perform Plaintiff's past relevant work as a porter or an usher—both of which are rated by the DOT as jobs requiring a reasoning level of two.  The Commissioner argues that the record does not support Plaintiff's argument that he is restricted to one-or-two-step instructions.  The Commissioner maintains that Serrano mischaracterizes Dr. Doncaster's consultative report to support this claim.  Dr. Doncaster concluded that Plaintiff's ability to handle complex and detailed instructions was poor, but his ability to handle simple one-or-two-step instructions was intact.  Dr. Doncaster concluded that Plaintiff was, at a minimum, capable of understanding, remembering and carrying out simple one-or-two-step instructions.  This means she described Serrano's functional abilities as a range, somewhere between simple instructions at a minimum, and below complex and detailed instructions.  By contrast, SSR 96-8p defines an RFC as "the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis."  Dr. Doncaster did not address Plaintiff's maximum remaining ability and only indicated that it was above the level of simple one-or-two-step instructions, and therefore there is no basis for Plaintiff to argue his RFC should be limited to one-or-two-step instructions.

The Commissioner argues that even if Dr. Doncaster had actually found Plaintiff limited to jobs of one-or-two step instructions, the majority of courts in this circuit have rejected Plaintiff's arguments that the restriction is incompatible with reasoning level two jobs.  The Commissioner cites *Meisel v. Barnhart,* 403 F.Supp 2d 981, 983-84 (C.D. Cal. 2005) which held against the Plaintiff's position.  The record in this case shows Plaintiff is not limited to jobs requiring an ability to follow simple one-or-two-step instructions.  Plaintiff performed the job of

a hotel porter and thus his claim that he lacks the general educational background to perform this job "makes no sense."  Unskilled work requires "little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. § 404.1568(a).  It was therefore reasonable for the ALJ to translate Dr. Doncaster's findings into a restriction to unskilled work.

The Commissioner also argues that substantial evidence supports the ALJ's credibility analysis.  Plaintiff's motion does not explain how his statements regarding his symptoms and limitations, if the ALJ had fully credited them, would establish his disability.  He fails to identify any of the testimony he claims the ALJ rejected.  Plaintiff has the burden of proving disability and his failure to present evidence in support of his claim or point out the error in the ALJ's decision is therefore tantamount to waiver.

However, on the merits of this claim, the court must determine whether there is a rational basis for the ALJ's credibility determination.  Questions of credibility and resolving conflicts in the testimony are the responsibility of the ALJ.  The ALJ summarized the medical record and justified his decision in almost four pages.  For example, the ALJ pointed out that Dr. Karl Fazekas, the consultative examiner, evaluated Serrano and found there was no sign of loss or damage of any kind to Plaintiff's right eye, that Plaintiff's range of motion was within normal limits, that his motor strength was five out of five, and that he had a normal gait and intact sensation throughout.  The ALJ cited the records of Dr. Yu who found AC joint arthritis with right shoulder impingement and also relied on Dr. Doncaster's psychiatric evaluation in setting mental health limitations.

At the hearing, Plaintiff testified that in addition to his impaired vision, the medical problems that interfered with his ability to work included his diabetes and high blood pressure.  However, the ALJ noted the record reflected improvement in Plaintiff's diabetes, and that in 2011, his glucose levels were significantly lower than they had been in the previous year.  New evidence was submitted directly to the Appeals Council after the ALJ's decision which confirmed the positive trend.  In six visits to a clinic between March 18, 2010, and October 25, 2010, the health care professionals Plaintiff saw reported he was well nourished and well developed and "in no acute distress."  Plaintiff stated he was feeling generally well and denied

16

any new complaints or problems.  On other occasions, Serrano's complaints were limited to itchiness, diarrhea, sore throat and sinus congestion.  Additionally, Plaintiff's therapist noted Plaintiff was making good progress, felt better, and was coping with unemployment and other stress in more appropriate ways.  Plaintiff himself testified at the hearing that he used no assistive devices, and was still able to drive and go fishing.  All of this evidence is more than enough to support the ALJ's decision and defeat Plaintiff's undeveloped claim.

The Commissioner asks that the court deny the motion to remand and affirm the Commissioner's decision.  If the court feels that legal error was committed, the appropriate remedy is to remand the case for further administrative development.

### C.  Plaintiff's Reply (Dkt. #18).

Plaintiff's reply reiterates arguments that the ALJ's residual functional capacity assessment was not based on substantial evidence in the record.  The ALJ did not reasonably interpret Dr. Doncaster's opinions that describe Serrano's ability as a range from a minimum to handling simple instructions to a maximum of somewhere below complex and detailed instructions.  A common-sense understanding of this opinion is that Serrano is limited to simple one-or-two-step instructions.  This would preclude Serrano from performing his past relevant work as a hotel porter and the occupations identified by the vocational expert.

Serrano maintains that the district courts in the Ninth Circuit are split as to whether a limitation to simple tasks with only one-or-two-step instructions is consistent with jobs described in the DOT requiring GED reasoning higher than level one.

Serrano also argues that the ALJ committed legal error by not offering a single legally sufficient reason to discount his testimony and that the court should either reverse for an award of benefits or remand for proper evaluation of Serrano's subjective complaints.

### VI.   <u>Analysis and Findings.</u>

### A.   The ALJ's RFC Findings.

Serrano's brief does not say what medical evidence the ALJ failed to consider in reaching his RFC.  At most, Serrano claims the ALJ misinterpreted Dr. Doncaster's report and findings.  Serrano does not claim that any of his physical impairments preclude him from working.  Rather,

1    he argues the occupations identified by the vocational expert limited him to unskilled jobs

2    requiring one-or-two-step instructions which is consistent with jobs described in the DOT

3    requiring GED reasoning higher than level one.

4        Reviewing the record as a whole, the court finds the ALJ did not err in his RFC

5    assessment that Plaintiff was capable of performing his past relevant work as a porter or an

6    usher.  CSR 96-8p defines an RFC as "the individual's maximum ability to do sustained work

7    activities in an ordinary work setting on a regular and continuous basis."  Serrano had been

8    performing the job of porter until he was fired, according to his own report, for falling asleep on

9    the job which he attributed to his diabetes.  AR 312.  Serrano did not claim that he experienced

10   any difficulties concentrating, following instructions or remembering job tasks assigned to him

11   while working.  In fact, he testified at the administrative hearing that he only had "a little bit" of

12   a problem concentrating, and that his memory was "fairly good."  AR 70.

13       The ALJ gave great weight to the psychological examination conducted by Dr. Maria

14   Doncaster, PhD, on March 3, 2010.  Dr. Doncaster reviewed Serrano's adult function report and

15   asked Plaintiff about his current complaints and history.  Plaintiff told Dr. Doncaster he was fired

16   from the Mandalay Bay for falling asleep on the job on the 10 p.m. to 6 a.m. shift.  AR 312.

17   Serrano told Dr. Doncaster that he was able to understand, remember, and follow simple one-or-

18   two-step instructions, to understand, remember, follow detailed instruction, but that his ability to

19   understand, remember, and follow extensive complex instructions was poor.  AR 313.

20       Dr. Doncaster performed a mental status examination assessing Serrano's concentration,

21   attention and memory skills.  She conducted a subset of tests and concluded Serrano's overall

22   ability to understand, remember, and carry out an extensive variety of complex instructions was

23   poor based on his performance on evaluation and observations of interview behavior.  AR 314.

24   She found that Serrano was unable to carry out detailed instructions based on his performance on

25   assessment and interview.  *Id.*  However, he had the ability to carry out simple one-or-two-step

26   instructions, and follow simple instructions on a sustained basis.  AR 314-15.  Dr. Doncaster's

27   report noted Serrano's attention, concentration and memory were variable "as was his

28   motivation" and that Serrano exhibited "variable effort throughout the assessment."  AR 315.

She determined, based on his performance at the assessment, that cognitively Serrano "would have trouble returning to the competitive work place as he is slow and demonstrates variable cognitive skills due to variable motivation." *Id.*

The court finds that the ALJ gave appropriate weight to Dr. Doncaster's opinions in determining that Serrano retained the ability to follow one-or-two-step instructions and did not commit legal error in finding Serrano could perform his past relevant work as a porter. The ALJ's findings were also supported by the mental residual functional capacity assessment conducted March 9, 2010, by medical consultant, Pastora Roldan, PhD. AR 330-333. Dr. Roldan found Serrano's understanding and memory and ability to understand or remember very short and simple instructions was not significantly limited and that his ability to understand or remember detailed instructions was moderately limited. AR 330. She found his ability to carry out very short and simple instructions was not significantly limited, his ability to carry out detailed out instructions was moderately limited, and that he had no significant limitations in the ability to maintain attention and concentration for extended periods, perform activities with a schedule, maintain regular attendance and be punctual, and make simple work-related decisions. He also found that he had no significant limitations in social interaction and adaptation. AR 331. Reviewing the record as a whole, the court found no indication that Serrano ever reported he was unable to work because of difficulty paying attention, concentrating, remembering or following instructions. At most, his adult function report stated his wife had to remind him to take his medication sometimes. AR 235. Serrano also reported that he sometimes forgot his son's school schedule and had to be reminded to pick him up. AR 240. The majority of his complaints in filling out the function report concerned his eye.

In short, the court finds that the ALJ did not err in concluding Serrano had the RFC to perform his past relevant work as a porter.

**B.  The ALJ's Credibility Determination.**

Serrano's motion to remand and reply brief do not cite a single statement Serrano made in the record that the ALJ concluded was not credible, or if fully credited, would establish Serrano had a disability that made him incapable of working. The record in this case establishes

that counsel for Serrano has changed positions regarding the nature of Serrano's alleged impairments which render him incapable of performing substantial gainful activity.   At the Administrative Hearing, counsel for Serrano claimed that Serrano was disabled because he met the Listing criteria for his impaired vision under 2.02 – 2.04.  AR 59.  Counsel also argued that he met the 12.04 Listing for depression.   These arguments were abandoned on appeal to the Appeals Council and were not raised here.  In his brief to the Appeals Council, Serrano's counsel argued the ALJ erred because the evidence of record demonstrates that the Administrative Record supported an RFC for sedentary exertion at best.  AR 255.  This argument was based on evidence submitted to the Appeals Council on May 10, May 31, and July 16, 2012, as well as exhibits in the existing Administrative Record.  Counsel for Serrano argued that a sedentary limitation would support a finding of disabled January 15, 2009, Serrano's forty-fifth birthday under Rule 201.17.  AR 255.  The brief submitted to the Appeals Council also claimed that Serrano had a severe mental impairment that prevented him from performing his past relevant work because he was limited to simple one-or-two-step instructions.  AR 255.  Additionally, Serrano argued to the Appeals Council that the ALJ failed to properly evaluate his subjective complaints, but, like here, did not state what subjective complaints the ALJ failed to properly evaluate.  AR 256.

As indicated, Serrano himself testified at the administrative hearing that he could no longer work because he was blind in his left eye, had diabetes and high blood pressure.  AR 58. He testified that the loss of his eye interfered with his ability to work as well as his diabetes and high blood pressure because his sugar level was constantly increasing.  AR 60.  Serrano did not testify that he lacked the ability to concentrate, follow instructions, or remember work-related tasks for the job he performed for many years.  Rather, he told Dr. Doncaster that he was fired for falling asleep.  He testified at the administrative hearing that his diabetes caused him to fall asleep.  His adult function report claimed his primary complaints were related to his vision.  He also claimed he had trouble falling asleep.

Serrano has the burden of establishing that he is unable to engage in any substantial gainful activity because of medically determinable physical or mental impairments which could

1    be expected to last for a continuous period of not less than twelve months.  He has not explained

2    how his statements regarding his symptoms and limitations, if the ALJ had credited them as true,

3    would establish his disability.  Further, the ALJ found only that Serrano's subjective complaints

4    concerning intensity, persistence and the limiting effect of his symptoms were not fully credible

5    to the extent they were inconsistent with his RFC determination. This was not error.

6    **VII.     Conclusion.**

7         Reviewing the record as a whole, the court finds the ALJ's decision is supported by

8    substantial evidence and should be upheld.

9         For the reasons stated,

10        **IT IS RECOMMENDED** that Serrano's Motion to Remand (Dkt. #12) be **DENIED**, and

11   that the Cross Motion to Affirm (Dkt. #15) be **GRANTED**.

12        Dated this 2nd day of September, 2015.

13

14                                                    _____
                                                      PEGGY A. LEEN
15                                                    UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28